UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **TREY GREENE, individually and on behalf of all others similarly situated,**<br><br>    Plaintiff,<br><br>    v.<br><br>**ZAC PRINCE, FLORI MARQUEZ, TONY LAURA, JENNIFER HILL and GEMINI TRADING, LLC,**<br><br>    Defendants. | Civ. No. 23-cv-01165 (KM) (LDW)<br><br>**OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

Before the Court in this putative securities class action are five motions for appointment as lead plaintiff and appointment of lead counsel by:

(i) Trey Greene and Arman Reyes (together, the "Greene Group") (DE 6);[1]

(ii) Cameron Wyatt (DE 7);

(iii) Antoine Elas (DE 8);

(iv) Yacov Baron (DE 9); and

(v) Pham Duy Anh Dang, along with the members of the Green Group (collectively, the "Dang-Greene Group") (DE 10).

For the reasons set forth herein, the motion (DE 10) of the members of the Dang-Greene Group (Trey Greene, Arman Reyes, and Pham Duy Anh Dang) to be appointed as lead plaintiffs and for Squitieri & Fearon, LLP and Moore Kuehn, PLLC to be appointed as co-lead counsel is granted. The remaining motions (DE 6, 7, 8, 9) are denied.

---

[1] Certain citations to the record are abbreviated as follows:

    DE = Docket entry number in this case

    Compl. = Complaint (DE 1)

## I. BACKGROUND

### A. Summary of Allegations

This putative securities class action is brought on behalf of all people in the United States who enrolled in a BlockFi Interest Account ("BIA") between March 4, 2019 and November 10, 2022. (Compl.) Investors hoped that their investment in the BIAs would earn them a return through BlockFi's deployment of pooled assets, namely loans of cryptocurrencies to institutional, corporate and other borrowers, loans of U.S. Dollars to retail investors, and investment in equities and futures. (*Id.* ¶ 2.) Essentially, "BlockFi allowed investors to invest in BIAs by depositing certain eligible cryptocurrencies or cash" and "then pooled the cryptocurrencies assets of the BIAs together to fund its lending operations and proprietary trading." (*Id.* ¶ 27.) BlockFi allegedly "promised BIA investors a variable interest rate, determined solely by BlockFi on a periodic basis, in exchange for crypto assets loaned by the investors." (*Id.* ¶¶ 5, 27.) On November 10, 2022, "BlockFi announced it would halt customer withdrawals and freeze account access," leaving class members without access to their investments. (*Id.* ¶ 12.) BlockFi filed for Chapter 11 bankruptcy on November 28, 2022. (*Id.*)

Count I alleges that the BIAs are unregistered securities which did not qualify for an exemption from registration, and that Defendants therefore violated Sections 5, 12, and 15 of the Securities Act of 1933 by offering and selling them. Count IV alleges that Defendants Prince and Marquez violated a corresponding New Jersey state registration statute, N.J.S.A 49:3-60. Count II alleges that Defendants violated Sections 12(a)(2) and 15 of the Securities Act by offering or selling a security using materially false representations. Count III alleges violations of Sections 10(b) and 20 of the Exchange Act and Rule 10b-5, *i.e.*, securities fraud. Count VI alleges a violation of the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1. Count V alleges that Defendants breached their fiduciary duties.

### B. Procedural History

The complaint was filed on February 28, 2023. (DE 1.) On April 30, 2023 and May 1, 2023, five competing motions were filed, all seeking appointment as lead plaintiff and approval of their selection of lead counsel. (DE 6, 7, 8, 9, 10.) No opposition has been filed to any of the motions.

## II. LEGAL STANDARD

The Private Securities Litigation Reform Act of 1995 (the "PSLRA") governs the appointment of the lead plaintiff in "each private action arising under the [Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(1). The PSLRA directs courts to adopt a rebuttable presumption that "the most adequate plaintiff is the person or group of persons that has (1) either filed the complaint or made a motion in response to the notice to the class; (2) has the largest financial interest in the relief sought by the class; and (3) otherwise satisfies the requirements of Federal Rule of Civil Procedure 23." *Lewis v. Lipocine Inc.*, No. 16-4009, 2016 WL 7042075, at *4 (D.N.J. Dec. 2, 2016) (citing *Fields v. Biomatrix, Inc.*, 198 F.R.D. 451, 456 (D.N.J. 2000) and 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)).

At this stage, in the context of the PSLRA, Rule 23 requires that the party or parties seeking to represent a class (1) have claims or defenses that are typical of the claims or defenses of the class, (the "typicality requirement") and (2) be able to fairly and adequately protect the interests of the class, (the "adequacy requirement"). *See* Fed. R. Civ. P. 23(a); *In re Cendant Corp. Litig.*, 264 F.3d 201, 263 (3d Cir. 2001); *Lewis*, 2016 WL 7042075, at *4. A more thorough analysis, of course, will occur at the class certification stage.

"Once a presumptive lead plaintiff is located, the court should then turn to the question [of] whether the presumption has been rebutted." *In re Cendant*, 264 F.3d at 268. The presumption "may be rebutted only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff—(aa) will not fairly and adequately protect the interests of the class; or

(bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). "[T]he question *is not* whether another movant might do a better job of protecting the interests of the class than the presumptive lead plaintiff; instead, the question is whether anyone can prove that the presumptive lead plaintiff will not do a 'fair[] and adequate[]' job." *In re Cendant*, 264 F.3d at 268 (citation omitted; alterations in original).

### III. MOTION TO APPOINT LEAD PLAINTIFF

#### A. Timely Motion in Response to Notice of the Class

All five motions were timely submitted. The PSLRA provides that, once a complaint is filed, the pendency of the action must be publicized in a widely circulated national business-oriented publication or wire service within 20 days. 15 U.S.C. § 78u-4(a)(3)(A)(i). The notice shall advise members of: (1) the pendency of the action; (2) the claims asserted therein; (3) the purported class period; and (4) the right to move the court to be appointed as lead plaintiff within 60 days of notice. *Id.* In this case, adequate notice was published through Newsfile Corp. on February 28, 2023 and through PR Newswire on March 1, 2023. (DE 6-3; DE 7-3 at 6–7; DE 8-2 at 6–7; DE 9-2 at 5–6; DE 10-3.) The Green Group filed their motion on April 30, 2023 and the other four motions were filed on May 1, 2023. All were filed within the 60-day deadline after publication and therefore meet this first, timely-filing requirement. *See* Fed R. Civ. P. 6. I note additionally that it was plaintiff Trey Greene who filed the initial Complaint.

#### B. Largest Financial Interest

Each motion asserts that its movants have the largest financial interest in the relief sought by the class. All appear to agree that, at this early stage of the litigation, investment volume serves as an appropriate estimate of financial interest. *Cf. In re Cendant*, 264 F.3d at 262 (noting that in determining which plaintiff or group has the largest financial interest, courts should consider, among other things, "the number of shares that the movant purchased during

4

the putative class period"). I set forth the claimed investment amounts in table format:

| **Movant(s)** | **Breakdown** | **Total Investment**[2] |
|---|---|---|
| Greene Group | Greene: $1,586,492 (invested) | $2,446,492 |
| | Greene: $400,000 (re-invested) | |
| | Reyes: $460,000 (invested) | |
| Wyatt | $4,135,900 (invested) | $4,135,900 |
| Elas | $425,000 (invested) | $425,000 |
| Baron | $417,694.50 (invested) | $417,694.50 |
| Dang-Greene Group | Dang: $2,243,602.06 (invested) | $4,690,094.06 |
| | Greene: $1,586,492 (invested) | |
| | Greene: $400,000 (re-invested) | |
| | Reyes: $460,000 (invested) | |

The Dang-Greene Group thus has the largest financial interest, even if Greene's re-investment of $400,000 (comprising $200,000 in "earned credited interest" and $200,000 in capital gains) is not included.

**C. Rule 23 Requirements**

There are four requirements for class certification under Rule 23(a): "the class is so numerous that joinder of all members is impracticable," "there are questions of law or fact common to the class," "the claims or defenses of the representative parties are typical of the claims or defenses of the class," and "the representative parties will fairly and adequately protect the interests of the

---

[2]   The movants' claimed investment amounts are drawn from the following: Trey Green (DE 6-4 at 2–3); Arman Reyes (DE 6-4 at 4–5); Cameron Wyatt (DE 7-3); Antoine Elas (DE 8-2); Yacov Baron (DE 9-2); Pham Duy Anh Dang (DE 10-4 at 2–3).

class." Fed. R. Civ. P. 23(a). These four requirements are frequently referred to as numerosity, commonality, typicality, and adequacy of representation.

"[O]f the four requirements for class certification under Rule 23(a), only two—typicality and adequacy of representation—directly address whether a lead plaintiff movant is the 'most adequate plaintiff.'" *Chao Sun v. Han*, No. 15-703, 2015 WL 2364937, at *3 (D.N.J. May 14, 2015) (citation omitted). At this stage of the litigation, the parties need make only a *prima facie* showing of typicality and adequacy, as determined by the Court in its independent judgment. *In re Cendant*, 264 F.3d at 264 (explaining that "both the statutory structure and the legislative history [of the PSLRA] suggest that the court's initial inquiry as to whether the movant with the largest losses satisfies the typicality and adequacy requirements need not be extensive").

1. **Typicality**

"The typicality requirement is satisfied if the plaintiff, as a result of the same course of conduct, suffered the same injuries as the other class members, and their claims are based on the same legal issues." *Lifestyle Invs., LLC v. Amicus Therapeutics, Inc.*, No. 15-cv-7448, 2016 WL 3032684, at *7 (D.N.J. May 26, 2016); *see also In re Cendant*, 264 F.3d at 264–65 ("[I]n inquiring whether the movant has preliminarily satisfied the typicality requirement, [courts] should consider whether the circumstances of the movant with the largest losses 'are markedly different or the legal theory upon which the claims [of that movant] are based differ[] from that upon which the claims of other class members will perforce be based.'") (quoting *Hassine v. Jeffes*, 846 F.2d 169, 177 (3d Cir. 1988)). The Rule 23(a)(3) typicality requirement "is to ensure that maintenance of a class action is economical and that the named plaintiff's claims and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Chao Sun*, 2015 WL 2364937, at *5 (citation and internal quotation marks omitted).

6

Here, the Dang-Greene Group members' claims arise from the same event or course of conduct that gives rise to the other class members' claims and are based on the same legal theory. The Dang-Greene Group alleges that they stand in the same shoes as all members of the class in that they have been harmed by Defendants' illegal sale of unregistered securities, the BIAs. (DE 10-1 at 7.) Therefore, I find that the Dang-Greene Group has made a *prima facie* showing of typicality.

### 2. Adequacy of Representation

When assessing the adequacy-of-representation requirement, "courts should consider whether [the movant] 'has the ability and incentive to represent the claims of the class vigorously, [whether the movant] has obtained adequate counsel, and [whether] there is [a] conflict between [the movant's] claims and those asserted on behalf of the class.'" *In re Cendant*, 264 F.3d at 265 (quoting *Hassine*, 846 F.2d at 179)). In doing so, the court should be mindful of two additional caveats. First, the court should consider whether the movant "lack[s] legal experience or sophistication, intend[s] to select as lead counsel a firm that [is] plainly incapable of undertaking the representation, or ha[s] negotiated a clearly unreasonable fee agreement with its chosen counsel." *In re Cendant*, 264 F.3d at 265–66. Importantly, however,

> the question at this stage is not whether the court would "approve" [the] movant's choice of counsel or the terms of its retainer agreement or whether another movant may have chosen better lawyers or negotiated a better fee agreement; rather, the question is whether the choices made by the movant with the largest losses are so deficient as to demonstrate that it will not fairly and adequately represent the interests of the class, thus disqualifying it from serving as lead plaintiff at all.

*Id.* at 266.

Second, where "the movant with the largest interest in the relief sought by the class is a group rather than an individual person or entity," a court should consider whether "the way in which a group seeking to become lead

7

plaintiff was formed or the manner in which it is constituted would preclude it from fulfilling the tasks assigned to a lead plaintiff." *Id.* The text of the PSLRA permits the appointment of a "person or group of persons" to be the lead plaintiff. 15 U.S.C. § 74u-4(a)(3)(B)(iii)(I). The group of persons does not need to be "related" in some manner; but any such group must be able to "fairly and adequately protect the interests of the class." *In re Cendant*, 264 F.3d at 266–67. While groups of unrelated individuals may be considered together as plaintiffs under the PSLRA, there are circumstances where such groups may not be appropriate:

> If, for example, a court were to determine that the movant "group" with the largest losses had been created by the efforts of lawyers hoping to ensure their eventual appointment as lead counsel, it could well conclude, based on this history, that the members of that "group" could not be counted on to monitor counsel in a sufficient manner.

*Id.* at 267. In determining whether the group will "fairly and adequately" represent the interests of the class, the following factors are instructive: "(i) whether the [members of the group] had a pre-existing relationship, (ii) the extent of that relationship, (iii) whether the group was created by the efforts of lawyers for the purpose of obtaining lead plaintiff status, and (iv) whether the group is too large to adequately represent the Class." *Chao Sun*, 2015 WL 2364937, at *4 (citing *In re Cendant*, 264 F.3d at 266–67.)

  The Dang-Greene Group is represented by counsel with deep experience in securities litigation, and their choice of counsel does not tend to indicate that they cannot fairly and adequately represent the interests of the class. (*See* DE 10-5; DE 10-6.) There are no known conflicts between the Dang-Greene Group and the members of the class, and, based on their significant financial losses, the Dang-Greene Group appears to have a sufficient interest in the outcome of the case to ensure vigorous advocacy.

  As to the group's size, the Third Circuit has stated that, generally, "groups with more than five members are too large to work effectively." *In re*

*Cendant*, 264 F.3d at 267. The Dang-Greene Group has only three members (Dang, Greene, and Reyes), and I thus perceive no cause for concern regarding the size of the group.

There is no representation either way as to whether Dang, Greene, and Reyes had any pre-existing relationship, so I will assume this is not the case. On the other hand, I have no indication that the group lacks any litigative agenda apart from the lawyers' quest for a fee, which would cast doubt on whether they will be diligent lead plaintiffs. Counsel Lee Squitieri declares that the group is actively engaged with counsel and "questioned both proposed co-lead counsel extensively" regarding the "process," their obligations as potential lead plaintiffs, and the substance of the claims. (DE 10-2 ¶ 3–4.) This eases any concerns about whether the Dang-Greene Group can be counted on to pursue the case and monitor counsel sufficiently.

I therefore find that the Dang-Greene Group has made a *prima facie* showing of adequacy of representation.

\*   \*   \*

The Dang-Greene Group is entitled to the presumption that they are the most adequate plaintiffs. They made a timely motion, have the largest financial interest in the relief sought by the class, and satisfy the typicality and adequacy of representation prongs of Rule 23.

### D. Rebuttable Presumption

Once a movant is found to be presumptively the most adequate plaintiff, that presumption

> may be rebutted only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff—
>
> (aa) will not fairly and adequately protect the interests of the class; or
>
> (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

9

15 U.S.C. § 74u-4(a)(3)(B)(iii)(II). In accordance with the statute, the burden falls on opposing parties to support these two rebuttal factors with proof. As noted, however, no opposition has been filed to the Dang-Green Group motion (or the other motions), and the Court's review of the filings does not suggest such rebuttal evidence. The presumption stands. The Dang-Greene Group's motion to be appointed lead plaintiffs (DE 10) is granted.

### IV.   MOTION TO APPOINT LEAD COUNSEL

The PSLRA vests authority in the lead plaintiff to select and retain counsel, subject to the approval of the court. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). In appointing class counsel under Federal Rule of Civil Procedure 23(g), the court must consider:

> (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A). The court will not disturb the plaintiff's choice of counsel unless rejection is "necessary to protect the interests of the plaintiff class." *See In re Cendant*, 264 F.3d at 274.

The Dang-Greene Group has selected Squitieri & Fearon, LLP and Moore Kuehn, PLLC to serve as co-lead counsel. (DE 10-1 at 9.) I have reviewed the firms' submissions (DE 10-5; DE 10-6), and I find that both firms meet the criteria of Rule 23(g). Both have considerable experience litigating similar class actions, have demonstrated their knowledge of the applicable law, and state that they possess and are willing to commit the resources necessary to represent the class.[3]

---

[3]   I also note that these two firms have already expended efforts in this action by drafting and filing the Complaint.

10

Accordingly, Squitieri & Fearon, LLP and Moore Kuehn, PLLC are appointed as co-lead counsel.

## V. CONCLUSION

For the foregoing reasons, the motion of Pham Duy Anh Dang, Trey Greene, and Arman Reyes to be appointed as lead plaintiffs and to have their counsel, Squitieri & Fearon, LLP and Moore Kuehn, PLLC, appointed as co-lead counsel (DE 10) is **GRANTED**. The motions of Cameron Wyatt (DE 7), Antoine Elas (DE 8), Yacov Baron (DE 9), and the separate motion of Trey Greene and Arman Reyes (without Dang) (DE 6) are **DENIED**.

An appropriate order accompanies this opinion.

Dated: October 13, 2023

/s/ Kevin McNulty

_____

**Hon. Kevin McNulty**
**United States District Judge**